1   Daniel W. Maguire (SBN 120002)
    E-mail:  dmaguire@bwslaw.com
2   Kristin Kyle de Bautista (SBN 221750)
    E-mail:  kkyledebautista@bwslaw.com
3   BURKE, WILLIAMS & SORENSEN, LLP
    444 South Flower Street, Suite 2400
4   Los Angeles, CA  90071-2953
    Telephone:  (213) 236-0600
5   Facsimile:  (213) 236-2700

6   Attorneys for Defendant
    Sun Life Assurance Company of Canada
7

8   Roland Juarez (SBN 160793)
    E-mail: rjuarez@hunton.com
9   Jennifer D. Ellis (FBN 0016511)
    Admitted Pro Hac Vice
10  E-mail: jellis@hunton.com
    HUNTON & WILLIAMS LLP
11  550 South Hope Street, Suite 2000
    Los Angeles, California  90071-2627
12  Telephone: 213 • 532 • 2000
    Facsimile: 213 • 532 • 2020
13
    Attorneys for Defendant
14  Pulau Electronics Corporation Employee Benefit Plan

15

16              UNITED STATES DISTRICT COURT

17      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

18  KARIN FLYNN,                          CASE NO. CV 10-4832 VBF (MANx)

19              Plaintiff,                **FINDINGS OF FACT AND
                                          CONCLUSIONS OF LAW**
20  v.

21  SUN LIFE ASSURANCE COMPANY            **Trial Date: July 19, 2011**
    OF CANADA; and DOES 1 through         **Time:  8:30 a.m.**
22  10, inclusive,                        **Ctrm:  9**

23              Defendants.

24

25       The Parties tried this case to the Court based on an administrative record on

26  July 19, 2011.  Plaintiff was represented by Gary Tysch.  Defendant Sun Life

27  Assurance Company of Canada was represented by Daniel Maguire of Burke,

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   Williams & Sorensen LLP.  Defendant Pulau Electronics Corporation Employee

2   Benefits Plan was represented by Roland Juarez and Jennifer Ellis of Hunton &

3   Williams LLP.  Having reviewed the administrative record, considered all timely

4   submissions by the Parties, and the arguments of counsel at trial, the Court makes the

5   following findings of fact and conclusions law.  Parenthetical references are to the

6   pages of the Administrative Record, filed on June 6, 2011.  (Doc. 31.)

7

8                               **FINDINGS OF FACT**

     **A.      The Benefit Plan Offered By Pulau**
9

10        1.      Plaintiff Karen Flynn is the widow of Edward Flynn ("Flynn"), one of a

11   group of former Raytheon employees hired by Pulau Corporation on May 1, 2008.

12   (133, 277, 280.)

13        2.      Pulau provides program management, operation and maintenance,

14   instructor/operator, logistics and supply chain management, vehicle repair and

15   maintenance, live fire range and shoot house maintenance and training system

16   relocations to the U.S. Government and other major prime contractors.  (133, 280.)

17        3.      In early 2008, Pulau began performing services for the U.S. Government

18   at Fort Irwin, California when it was awarded a subcontract with Raytheon Technical

19   Services Company, a company that provides services similar to those provided by

20   Pulau.  (*Id.*)  Under the new contract arrangements, a large number of Raytheon

21   employees left Raytheon and joined Pulau, as new hires.  (*Id.*)  Flynn, Plaintiff's

22   deceased husband, was one of those employees and began his employment with Pulau

23   on May 1, 2008.  (133, 277, 280.)

24        4.      New Pulau employees, including Flynn, were offered the opportunity to

25   participate in Pulau's ERISA-governed benefit plan.  The Pulau benefit plan is self-

26   administered.  (270-71.)  Pulau structures the benefit package and is responsible for

27   enrollment of eligible participants in all plan benefits.  Pulau maintains all enrollment

28   records, including enrollment forms and billing information.  (*Id.*)  The terms,

1   conditions and limitations of the benefits are governed by the plan documents.

2       5.    The new employees, including Flynn, could choose between two benefit

3   options.  (280.)  Option 1, known as the "insurance option," allowed participation in

4   Pulau's Group Health and Welfare Plan.  (113-14, 283-84.[1])  This included a total

5   package of medical, dental, vision, disability and life insurance under group insurance

6   policies issued to Pulau by various insurers, among other Company benefits.  (*Id.*)

7       6.    Option 2, the "extra pay" option, offered an additional $3.16 per hour, in

8   lieu of any participation in the Health & Welfare Plan.  (113-14; 285-86.)  The extra

9   pay would enable the employee to purchase his or her own insurance, if they so

10  desired.  (285.)

11      7.    Option 1 was all or nothing.  The new hire could not pick and choose

12  which of the insurance coverages he or she wanted.  (113-14, 283-84.)  The insurance

13  package had to be accepted as a whole.  Within Option 1, the life insurance benefit

14  was funded by Pulau through a group insurance policy issued by Sun Life, effective

15  October 1, 2003.  (168.)

16      8.    A Memorandum describing the choice between Options 1 and 2 and

17  enclosing copies of both benefits options, was provided to the new Raytheon hires,

18  including Flynn, by Memorandum dated May 1, 2008.  (282-86.)

19      9.    The group life insurance policy allowed Flynn to elect basic life coverage

20  of $50,000.  (171.)  Under the guaranteed issue provision of the Sun Life policy,

21  optional life insurance coverage was limited to the lesser of three times annual

22  earnings or $50,000.  (172, 123.)  The guaranteed issue amount is defined as follows:

23          "**Guaranteed Issue Amount** means the maximum amount of

24          insurance   available   under   this   Policy   without   Evidence   of

25

[1] At trial, Plaintiff's counsel objected to the admission of Administrative Record pages 282 to 296.
26  Those objections are overruled.  No written objections were filed by Plaintiff, even though the
Administrative Record was filed on June 6, 2011.  (Doc. 31.)  At trial, counsel for Sun Life
27  represented that the Administrative Record was circulated to Plaintiff's counsel 10 days prior to
filing with an invitation to object or modify, and no response was received from Plaintiff.  Plaintiff's
28  counsel did not contest that representation.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

Insurability.  If the Employee's or Dependent's amount of insurance exceeds the Guaranteed Issue Amount available under this Policy, any amount in excess of the Guaranteed Issue Amount is available to the Employee or Dependent *only if he has furnished Evidence of Insurability to Sun Life and has been approved* for any excess amount above the Guaranteed Issue Amount."  (176) (emphasis added).

10.    Additional optional coverage up to the lesser of $500,000 or five times his annual earnings was available, but only if Flynn submitted, and Sun Life accepted, his Evidence of Insurability application.  (171-72.)  At the time of his death, Flynn's Basic Annual Earnings were $50,000.  (277.)  Flynn acknowledged the Evidence of Insurability requirement on the enrollment form.  (123.)

### B.    Flynn Initially Selected The Insured Option

11.    In May 2008, Flynn initially selected Option #1 -- i.e., to participate in Pulau's health and welfare plan.  However, rather than enrolling in all of the benefits packages that make up Pulau's Option #1, Flynn attempted to enroll in life, dental, vision, and disability insurance, and then attempted to decline participation in other benefits, such as medical insurance.  (117, 120.)  This was not a proper election of coverage.  (283-286.)

12.    Similarly, Flynn incorrectly completed the optional life insurance enrollment form.  He attempted to apply for $500,000 in optional life insurance coverage, although his Optional Maximum Benefit was $250,000.[2]  (123.)

13.    Although Flynn could not obtain optional life insurance coverage beyond $50,000 without providing evidence of insurability and obtaining approval from Sun Life for any excess amount above $50,000, he never submitted such evidence of insurability and never obtained any such approval from Sun Life.  (5, 26, 108.)

14.    Because Flynn had selected Option #1, which included the health

---

[2] Flynn's Optional Maximum Benefit was the lesser of $500,000 or 5 times his Basic Annual Earnings.  (171.)  At the time of his death, Flynn's Basic Annual Earnings were $50,000.  (277.)

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

insurance package (i.e., medical, dental, vision), short and long term disability insurance, and basic life insurance coverage, and because he never submitted evidence of insurability for optional life insurance above $50,000, Pulau began deducting the appropriate employee contributions, including $80.00 for health insurance beginning with his June 4, 2008 paycheck, and $15.95 for the $50,000 in optional life insurance, $14.03 for short term disability insurance, and $8.97 for long term disability insurance, beginning with Flynn's June 18, 2008 paycheck. (124.)

15.    Pulau enrolled the new hires in the Meritain health insurance policy in May and set-up the payroll deductions to begin in the employees' June 4, 2008 paycheck. (124.)  Pulau did not begin processing enrollments for the life insurance policy until June. (125, 133.)  Although Vickie Wasik, HR Administrator at Pulau, set up Flynn's payroll deductions for the $50,000 in optional insurance coverage to begin in his June 18, 2008 paycheck, she did not complete his enrollment with Sun Life because she wanted to speak with Flynn first. (276.)

16.    In fact, when Ms. Wasik first received the life insurance enrollment forms, she noted Flynn's improper election, and observed that he could only elect $100,000 of total coverage without evidence of insurability. (*Id.*)  This is why Ms. Wasik held off on completing Flynn's enrollment in the group life insurance policy and noted she would need to speak with Flynn about this issue. (*Id.*)  Flynn never submitted evidence of insurability. (5, 26, 108.)  Therefore, the application process was never completed.

### C.    Flynn Cancels the Enrollment Process Before It Is Complete

17.    Upon noticing the $80.00 deduction for health insurance in his June 4, 2008 paycheck, Flynn sought clarification from Katrina Griego, another Pulau employee, regarding his benefit options. (281.)  He inquired whether he could participate in only some of Pulau's benefits or whether he had to participate in all of them, and asked Ms. Griego if she could find out for him. (*Id.*)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

18.     Ms. Griego contacted Ms. Wasik, who explained to Ms. Griego that the benefits were a "package deal."  (*Id.*)  Ms. Wasik asked Ms. Griego to have Flynn call her, so she could make sure all of his questions were answered and that he fully understood.  (*Id.*)  When Ms. Griego explained all of this to Flynn, he told her that he "more than likely would be collecting the $3.16" but that he would call Ms. Wasik just to make sure "things were straight."  (*Id.*)

19.     On June 11, 2008, Flynn spoke with Ms. Wasik.  (113-14, 276, 280.) She explained that if he wanted life insurance, he also had to pay for the health insurance package.  (*Id.*)  Flynn did not want medical insurance because he already had such coverage through his wife's employer.  He therefore explained to Ms. Wasik that he changed his mind and did not want Option #1.  (*Id.*)

20.     Ms. Wasik reiterated to Flynn the consequences of that election, including that he would not be eligible for either the basic or the optional life insurance, and repeatedly asked if selecting Option #1 was what he really wanted to do.  (*Id.*)  He voiced his understanding, and stated he wanted to receive the additional $3.16 per hour "right away."  (*Id.*)

21.     Because Pulau's processing of the former Raytheon employees' life and short and long term disability insurance enrollments had not yet been completed or submitted to the insurers, including Sun Life, Ms. Wasik allowed Flynn to stop the enrollment process.  (133-34, 280.)  Ms. Wasik recorded Flynn's declination of coverage in writing on the benefits enrollment forms he had previously submitted, on copies of memoranda he received regarding his benefits, and on an Employee Change of Status Authorization form.  (117, 121-23, 127, 130-31.)

22.     Ms. Wasik also adjusted Flynn's payroll so that he would begin receiving the $3.16 per hour payment effective June 9, 2008, and reimbursed him for any deductions for the optional life insurance coverage and short and long term disability

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

1   coverage.[3] (125-26.)  His paychecks, beginning with the paycheck dated July 2, 2008,

2   reflect that Flynn was receiving the $3.16 per hour payment at the time of his death.

3   (*Id.*)

4   **D.   Flynn's Death and Plaintiff's Life Insurance Claim**

5   23.   On July 27, 2008, Flynn died as the result of a heart attack.  (158, 163.)

6   24.   In August or September 2008, Flynn's son, Thomas, contacted Pulau,

7   requesting that Pulau send Plaintiff pertinent information concerning Flynn's life

8   insurance coverage.  (113-14.)

9   25.   Toni L. Tattoli, then Director of Human Resources, spoke with and

10  obtained written statements from both Ms. Wasik and Ms. Griego.  (280-81.)  After

11  review of this information, and Flynn's file, Ms. Tattoli sent a letter to Plaintiff, dated

12  September 3, 2008, explaining that although Flynn had initially chosen Option #1 of

13  Pulau's benefits package, his election was cancelled at his request prior to completion

14  of the enrollment process.  (113-14.)

15  26.   Ms. Tattoli explained that once the deductions started being taken out of

16  Flynn's paycheck, he decided that he did not want Option #1 but wanted to receive the

17  $3.16 per hour payment instead.  (*Id.*)  Ms. Tattoli attached copies of the benefit

18  options Flynn received when he was hired by Pulau, as well as the Change of Status

19  Authorization form on which Ms. Wasik recorded in writing Flynn's decision to

20  cancel his election,[4] and the Payroll Journal showing that Flynn was receiving the

21  $3.16 per hour payment effective June 9, 2008.  (*Id.*)

22  27.   Pulau considered the following information and documents in responding

23  to Plaintiff's son:  (1) the Policy documents; (2) Pulau's informational sheets

24  describing Options #1 and #2 (282-86); (3) Flynn's Employee Records Jacket (277);

25

26  _____

[3] Because Flynn was already enrolled in the Meritain health insurance policy, Pulau terminated his
27  coverage as of June 30, 2008, and he was not reimbursed for coverage for that period.  (124-26, 127, 280.)

28  [4] Ms. Wasik's notation on the Change of Status Authorization form to "cancel insurance coverage
6/30/08" referred to Flynn's Meritain health insurance coverage.  (127, 280.)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   (4) the welcome letter and Employee Packet provided to Flynn at the time of hire

2   (287-96); (5) Flynn's completed enrollment forms, on which Ms. Wasik noted his

3   June 11, 2008 change in election from Option #1 to Option #2 (117-23); (6) the May

4   19, 2008 and June 5, 2008 memoranda to Flynn regarding his insurance coverages, on

5   which Ms. Wasik noted his change in election (130-31); (7) Employee Change of

6   Status Authorization forms, on which Ms. Wasik noted Flynn's change in election

7   (127-28); (8) Flynn's payroll register (124-26); and (9) the August 20, 2008 and

8   August 21, 2008 written statements from Ms. Wasik and Ms. Griego, explaining the

9   circumstances regarding Flynn's change in election (280-81).

10          28.    Six months later, on March 23, 2009, Plaintiff completed a claim packet,

11   which Sun Life received on April 22, 2009.  (164-167.)

12          29.    Upon receipt of the claim, Sun Life commenced its investigation.  As part

13   of that investigation, Sun Life contacted Pulau, spoke to its attorney on April 30,

14   2009, and obtained relevant information and documentation from Pulau.  (94, 98, 133-

15   57).

16          30.    In preparing its response to Sun Life, Pulau again reviewed and relied

17   upon the documents enumerated above, as well as a December 15, 2008 letter from

18   US Army Captain and Legal Assistance Attorney Donel J. Davis (279) and a March 2,

19   2009 memorandum from Ms. Wasik (276).

20          31.    On May 21, 2009, Sun Life determined that no benefits were payable.

21   (107-110.)  In its written claim decision, Sun Life stated that Flynn could only have

22   qualified for the guaranteed issue amounts of $50,000 basic and $50,000 optional

23   coverage without Sun Life's approval of his Evidence of Insurability application, had

24   he not opted out of the insurance package entirely.  However, by electing and

25   receiving the extra pay, he had opted out of the life coverage, and no benefits were

26   payable.

27          32.    Mrs. Flynn hired counsel who wrote an "intent to appeal" letter to Sun

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Life on December 28, 2009, requesting the plan documents and administrative record.

2    Sun Life sent Plaintiff's counsel that documentation on December 30, 2009 (91), and

3    counsel submitted Plaintiff's appeal on April 30, 2010 (22), raising a number of

4    arguments.

5       33.     Sun Life upheld its decision on appeal. (4-7.) Sun Life noted the appeal

6    was not timely, but it was nevertheless considered on its merits.

7       34.     Sun Life addressed the basis for its original decision, and responded to

8    the arguments raised by Plaintiff's counsel in the administrative appeal, explaining

9    that no benefits were payable because:

10       •     Flynn had opted out of the benefits package that offered insurance

11           coverage.

12       •     Flynn had not submitted Evidence of Insurability; therefore, he would not

13           have been eligible for any amount over $100,000 in total coverage under

14           any circumstances.

15       •     Flynn had elected and received the increased pay benefit at Pulau.

16       •     The grace period provisions of the policy did not create coverage, as

17           those provisions relate only to the period during which the coverage has

18           been in premium payment status by the policyholder.

19       •     The conversion privilege under the policy did not apply because Flynn's

20           voluntary opt-out of the benefits package did not trigger a conversion

21           right.

22       35.     Plaintiff was advised of her right to sue under ERISA § 502(a)(1)(B).

23    She filed the instant lawsuit on June 28, 2010, challenging Sun Life's decision

24    denying the payment of life insurance benefits and coverage under the Policy.

25    (Doc. 1.)

26

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**CONCLUSIONS OF LAW**

**A.  Jurisdiction and Venue**

1.     This Court has jurisdiction, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).  Venue is proper in the Central District of California, as the District in which the claims arose and in which Defendants may be found.

**B.  Standard of Review and Scope of Review**

**1.  The Court Has Reviewed Sun Life's Decision *De Novo***

2.     A Court reviews a denial of ERISA benefits *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct.  948 (1989).  Because the Sun Life policy does not contain discretionary language, this Court has reviewed Sun Life's claim determination under a *de novo* standard of review.  *Id.*; *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) *en banc*.

3.     When a benefits claim is subject to *de novo* review, a Court must review the claim by interpreting the governing plan documents without deferring to any party's interpretation.  *Bruch*, 489 U.S. at 112-13.  The Supreme Court has instructed us to review an employee's claim "as it would . . . any other contract claim – by looking to the terms of the plan and other manifestations of the parties' intent."  *Id.*

**2.  The Court May Consider Extra-Record Evidence Necessary To Its Determination**

4.     In most ERISA actions governed by *de novo* review, only the administrative record is admitted into evidence at trial.  *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995).  In this matter, the Court finds that the administrative record includes the documents that were reviewed and/or relied upon by Pulau, as evidenced in the declaration of Vickie Wasik.  *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 n.4 (9th Cir.

1    2009) ("In the ERISA context, the 'administrative record' consists of 'the papers the

2    [administrator] had when it denied the claim.'").  Such declarations are admissible for

3    purposes of establishing the Administrative Record.  *See, e.g., Marks v. Newcourt*

4    *Credit Group, Inc.*, 342 F.3d 444, 457-58 (6th Cir. 2003) ("Therefore, because [then-

5    Director of Employee Relations] would have personal knowledge of the

6    administrative record available to the plan administrators at the time of their final

7    decision, we find that the district court did not abuse its discretion by relying on [his]

8    affidavit to determine the administrative record.")

9         5.    Moreover, the Court may consider new evidence if circumstances

10   establish that additional evidence is necessary to conduct an adequate *de novo* review

11   of the benefit decision.  *See id.* at 943-44; *Opeta v. Northwest Airlines Pension Plan*,

12   484 F.3d 1211, 1217 (9th Cir. 2007).  Sun Life has suggested that if the Court finds it

13   necessary to reach a determination of whether coverage was ever placed in force for

14   Flynn, the Declaration of Kristin Goodwin and exhibits thereto may be considered.

15   Her Declaration attaches screen shots from Sun Life's computer demonstrating that

16   Flynn was never enrolled with Sun Life under the policy at issue.  (Exh. 1 to Goodwin

17   Decl.)

18        6.    Plaintiff has the burden of proving entitlement to benefits under the Plan.

19   *See Seleine v. Fluor Corp. LTD Plan*, 598 F.Supp.2d 1090, 1100 (2009) aff'd 409

20   Fed. Appx. 99 (9th Cir. 2010); *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d

21   1039, 1040 (11th Cir. 1998).  The evidence in the Administrative Record

22   demonstrates that Pulau returned the premiums deducted from Flynn's paycheck

23   directly to Flynn, rather than submitting them to Sun Life.  (125.)  The evidence in the

24   Administrative Record also demonstrates that Pulau never sent any premiums for

25   Flynn to Sun Life.  This fact is undisputed.  Again, had there been doubt on the issue,

26

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

Ms. Goodwin's declaration is admissible to prove no premiums were paid to Sun Life.[5]

**C.** **Sun Life's Decision to Deny Benefits Is Fully Supported by the Law and the Administrative Record**

    **1.** **Flynn Never Completed the Enrollment Process and was Not, Therefore, Covered by the Sun Life Policy**

        **a.** **Flynn Completed the Enrollment Forms Incorrectly**

7.    Flynn initially made improper elections and incorrectly completed the enrollment forms. He chose life insurance, but attempted to decline medical insurance, and he chose a life insurance amount that was invalid for him. (117, 120, 123.) As a matter of law, the Court finds that these improper elections fully and independently support a denial of benefits. *See, e.g., Alexander v. Provident Life & Acc. Inc. Co.,* 153 F.3d 718, *4 (4th Cir. 1998). In *Alexander*, the plan administrator denied life insurance benefit payments under a "Member Only" policy to the decedent's widow, on the basis that the decedent's coverage was invalid because of his improper completion of the enrollment card. *Id.* at 1. Specifically, the decedent attempted to enroll in a "Member Only" policy, when he was already listed and insured as a dependent under his wife's "Member and Family" policy. *Id.* The court found that the decedent improperly completed his enrollment card, as the plan clearly prohibited duplicate coverage for family members, and that his coverage was therefore invalid. *Id.* at 4. In upholding the denial of benefits, the court held that the plan administrator acted correctly when it canceled the decedent's coverage under the "Member Only" policy after his death and refunded the premiums deducted in error to his estate. *Id.*

---

[5] Plaintiff objected to extra-Administrative Record evidence submitted by Defendants in the form of Declarations of Kristen Goodwin and Vickie Wasik. The Court denies those objections. The Court holds that the Wasik declaration is admissible to establish the content of the Administrative Record, and the Goodwin Declaration is admissible to demonstrate that Sun Life never received premiums for Flynn's coverage.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

8.     Similarly, here, Flynn's improper completion of the optional life insurance enrollment application, his improper election of benefits offered by Pulau, and his seeking coverage precluded by the policy without evidence of insurability, resulted in the coverage being invalid.  Pulau's cancellation of the enrollment process and return to Flynn of any payroll deductions, was therefore proper.

### b.     Flynn Withdrew His Original Application

9.     The Court also finds that Flynn's withdrawal of his application for life insurance, and his decision that he did not want life insurance coverage, is a second and independent reason supporting denial of claim.  During his June 11, 2008 conversation with Vickie Wasik, Flynn told Ms. Wasik that he had "changed his mind," and withdrew his election for the Option 1 insured plan in favor of the Option 2 increased pay package.  (276, 280.)  Ms. Wasik therefore promptly voided his Sun Life enrollment forms, and effectuated his increased pay option on the payroll system effective June 9, 2008. (122-23, 125.)

10.     Due to the defects on Flynn's application, Pulau never submitted Flynn's enrollment forms to Sun Life, and Flynn later withdrew them.  (276, 280.)  Because the Sun Life coverage never went into effect, it did not need to be "terminated," and Flynn could effectively withdraw his application and refuse coverage.

11.     Flynn's ultimate decision to withdraw his enrollment for coverage did not have to be in writing.  Contrary to Plaintiff's assertion at trial, the Court finds that Sun Life's policy does not require an employee to refuse coverage in writing.  Plaintiff misreads the following policy provision:

> **Refusal of Coverage**
> If an eligible Employee declines his insurance, or terminates his insurance in writing while continuing to be eligible, the Employee will become insured after he applies for insurance and Evidence of Insurability is approved by Sun Life.  (182.)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

12.     Nothing in this language requires an employee to decline insurance coverage in writing.  The only reference to "writing" in this provision relates to termination of insurance.  In that respect, the policy provides that if the employee terminates his insurance in writing (while still eligible), he or she may become insured only after he applies for the insurance and submits evidence of insurability approved by Sun Life.

13.     Plaintiff also cites a provision from the employee handbook which states as follows:

> **What happens if I do not want my Insurance?**
> You need to sign a form refusing your insurance.
> This form is available from your Employer.
> If you decide later you want to enroll for insurance,
> Sun Life must first approve your Evidence of
> Insurability.  (223.)

14.     It is evident from the Administrative Record that Pulau considered Flynn's declination of coverage, which was confirmed in writing on his enrollment form, to satisfy this provision.  (122-23.)  Even if this were not the case, however, the provision does not apply because Flynn did not originally refuse the coverage; he elected it.  Flynn later changed his mind and withdrew that election, a request that Pulau honored.  (276, 280.)  The handbook is silent as to what if anything was required in that instance, and as Plan Administrator, Pulau had the right not to insist on the submission of a particular form by Flynn.

### d.     Sun Life Never Received Premiums or Enrollment Forms for Flynn

15.     There is no evidence in the record that Flynn's enrollment forms were submitted by Pulau to Sun Life.  This is because when Pulau reviewed them, Vickie Wasik noticed they were deficient (by reason of the election of an unavailable amount, and the failure to submit evidence of insurability).  (276.)  There is also no evidence

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

1    that any premium was paid to Sun Life for Flynn's coverage.[6]   The Court finds that

2    because Flynn was never enrolled at Sun Life by Pulau and no premiums were paid on

3    his behalf, he was not entitled to coverage under the policy.

4                    **2.    Flynn's Election of Extra Pay Operated As a Novation**

5            16.    Even if Flynn's election of the insured option had become effective as to

6    the Sun Life policy, this Court concludes that his later substitution of the increased

7    pay option and actual receipt of the increased pay operated as a novation, thereby

8    extinguishing any liability Pulau and/or Sun Life would have had under the Sun Life

9    policy.  Because there is no federal law of contracts, the Court's interpretation of

10   novation is informed by state law even though the application of a federal statute is

11   involved.  *See Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir.

12   1990); *In Re Aslan*, 909 F.2d 367, 369 (9th Cir. 1990).

13           17.    Flynn's exercise of the increased pay option governs the relationship

14   between Flynn and Pulau.  Novation is "the substitution of a new obligation for an

15   existing one."  *Fanucchi & Limi Farms v. United Agri Products*, 414 F.3d 1075 (9th

16   Cir. 2005) (quoting Cal. Civ. Code § 1530).  Novation may be accomplished either by

17   the substitution of a new debtor or a new creditor, or "[b]y the substitution of a new

18   obligation between the same parties, with the intent to extinguish the old obligation."

19   Cal. Civ. Code § 1531(1).  Novation wholly extinguishes the earlier contract.  *See*

20   *Davies Mach. Co. v. Pine Mountain Club, Inc.*, 39 Cal.App.3d 18, 25, 113 Cal. Rptr.

21   784 (1974).

22           18.    In examining a novation claim, the Court first looks to the agreements

23   themselves.  *See Alexander v. Angel*, 37 Cal.2d 856, 861-62 (1951).  Here, Pulau's

24   Plan documents clearly describe the two benefit package options.  (282-86.)  Flynn

25   could choose one or the other, not both.  The insured option was "all or nothing," not

26   a cafeteria arrangement.  (283-84.)  In examining a novation, we also take into

27

28
_____
[6] The Court also notes that this conclusion is reinforced by the Declaration of Kristin Goodwin.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

consideration the conduct of the parties, particularly where the subsequent agreement is oral.  *See Fanucchi, supra*, 414 F.3d at 1082.  Indeed, "it is not necessary to meet and to state either in writing or orally that the original contract was rescinded.  'If the intent to abandon can be ascertained from the acts and conduct of the parties, the same result will be attained.  Abandonment may be implied from surrounding facts and circumstances.'"  *Id.* citing *Hunt v. Smyth*, 25 Cal.App.3d 807, 818, and *Tucker v. Schumacher*, 90 Cal.App.2d 71, 75 (1949).

19.     Here, the surrounding circumstances are clear that Flynn changed his mind and decided to elect the extra pay option, in place of the insured option.  His choice made sense.  It was motivated by the fact that he already had medical coverage, and did not want to pay for duplicate coverage.  He understood that the insured option was all or nothing.  Ms. Wasik at Pulau explained to him the consequences of his choice – he would not be eligible for any life insurance coverage through Sun Life.  (276, 280.)  Flynn nevertheless elected to receive increased pay.  (*Id.*)

### 3.     Flynn's Receipt of Extra Pay Operated as an Accord and Satisfaction

20.     Similarly, even if Flynn's election of the insured option had become effective as to the Sun Life policy, this Court concludes that his later substitution of the increased pay option and actual receipt of the increased pay operated as an accord and satisfaction.  Under California law, an accord is defined as "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled."  Cal. Civ. Code § 1521.  Once "the something different" has been delivered, there has been satisfaction of the accord.  Cal. Civ. Code § 1523; *Fanucchi*, 414 F.3d at 1086.

21.     Until the accord is fully executed, the original obligation is not extinguished.  *See id.* at 1086, citing *Gardiner v. Gaither*, 162 Cal.App.2d 607, 621 (1958).  Here, Flynn received the extra pay starting June 9, 2008, as reflected by the

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

1   payroll records.  (125.)  At that time, the accord was fully executed, and any original
2   obligation to provide life insurance pursuant to his original enrollment forms was
3   thereby extinguished under the principles of accord and satisfaction.

4   **4.    Even if coverage attached, the coverage was terminated.**

5          Even if it can be argued that Flynn somehow enrolled in the policy, review of
6   the policy terms confirms that he most certainly terminated his coverage before his
7   death.  The policy provides that insurance terminates on the last day for which any
8   required premium has been paid.  (200.)  It is undisputed that no premiums were being
9   paid by Flynn to anyone (not even Pulau) at the time of his death.  The sole payroll
10  deduction for the life coverage (which was never forwarded to Sun Life) was
11  reimbursed to Flynn by Pulau over a month before his death.  (124-25).  Thus, any
12  coverage was most certainly terminated before Flynn's death.

13  **D.    Plaintiff's Arguments for Coverage Fail**
14  **1.    There Was No Waiver of Defenses**

15         22.    At trial, Plaintiff suggested that Defendants waived or are estopped from
16  asserting certain arguments advanced in their opening briefs and at trial, because they
17  were not advanced as a basis for denial of her claim or upholding that claim
18  determination on appeal.  The Court finds that Plaintiff's arguments on this point are
19  without merit.

20         23.    The Court recognizes the Ninth Circuit's instruction that District Courts
21  are limited to review of the reasons for denial asserted during the administrative
22  process to prevent an administrator from sandbagging an employee "by a rationale the
23  plan administrator adduces only after the suit has commenced."  *Jebian v. Hewlett-*
24  *Packard Co. Employee Benefits Plan*, 349 F.3d 1098, 1104-05 (9th Cir. 2003).
25  However, the Court finds this authority inapplicable to this case for two reasons.

26         24.    First, there is no factual basis for Plaintiff's assertions that Defendants
27  employed a new rationale after suit was commenced.  The arguments advanced by

28

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Defendants in litigation are consistent with those relied upon in support of the claim denial, and in upholding the denial on appeal. During the administrative process, Defendants took the position that Flynn was not entitled to life insurance benefits because he opted out of the insured option (5, 6, 108), elected and received extra pay instead (*id.*) and failed to submit evidence of insurability. *Id.* These same arguments were presented in litigation and at trial, and indeed form the basis for the Court's decision.

25.     Second, concepts of waiver or estoppel cannot be used to create coverage beyond that actually provided by an employee benefit plan. *See*, e.g., *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375 (2nd Cir. 2002); *Juliano v. Health Maintenance Org. of New Jersey, Inc.*, 220 F.3d 279, 288 (2nd Cir. 2000); *Shutts v. First Unum Life Ins. Co.*, 310 F. Supp. 2d 489, 494 (N.D.N.Y. 2004).

26.     Finally, the Court notes that the threshold argument advanced by Defendants and adopted by the Court is that Flynn *never became insured in the first place* under the Sun Life policy. This is not a case where the insurer or claims administrator relied on a different interpretation or legal argument on a coverage issue in litigation. Rather, the position of Defendants was consistent throughout the claims process and the litigation that Flynn never completed the enrollment process under the rules established by Pulau, and was therefore never insured under the Sun Life policy.

## 2.     Coverage Did not Start on the First Day of Flynn's Employment

27.     Plaintiff argues that Flynn's coverage attached on his first day of employment. Based on the Plan language, the Court rejects this argument, because there is a distinction between eligibility for benefits, and enrollment in Pulau's benefit package. Upon joining Pulau as an employee, Flynn was eligible to choose between its two benefit option plans. (282.) In order to *participate* in either of those packages, however, he was required to do two things -- elect one of the packages, and, for the

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

insurance option, enroll in coverage.  As explained above, Flynn never properly enrolled in the Sun Life coverage, and even if he had, he withdrew that enrollment prior to it becoming effective.

### 3.   Delivery to Pulau of Enrollment Forms Does not Support Coverage

28.    Plaintiff seems to suggest that even though Flynn was never enrolled in the Sun Life policy by Pulau and no premiums were paid to Sun Life on his behalf, he nevertheless enrolled in the coverage through Pulau, and that Pulau acted as Sun Life's agent both for purposes of receiving the enrollment forms and the premium payment (through payroll deduction).

29.    Plaintiff's argument fails because the policy specifically provides that the employer is not deemed an agent of Sun Life.  (206.)  In *UNUM v. Ward,* 526 U.S. 358, 379 (1999), the United States Supreme Court held that California law deeming an employer to be the agent of the insurance company in administering group insurance policies was preempted by ERISA, and that such agency laws are not within the "saving" clause of ERISA.  Subsequent cases have therefore given effect to these "no agency" provisions in ERISA policies.  *See, e.g., Adamson v. UNUM,* 455 F.3d 1209, 1216 (10th Cir. 2006).

30.    This was a group life insurance policy governed by ERISA, which was self-administered by the employer, Pulau.  (270-271.)  The policy language that Pulau should not be considered an agent of Sun Life is clear, unambiguous and enforceable. (206.)  *See Padfield v. AIG Ins. Co*., 290 F.3d 1121, 1125 (9th Cir. 2002).  Further, California state law deeming an employer as the insurer's agent is preempted by ERISA.  *See UNUM,* 526 U.S. at 379.  Therefore, the Court concludes that Pulau was not Sun Life's agent for any purpose.  In any event, the payroll deduction was reversed and refunded by Pulau following Flynn's election of extra pay, long before his death.  (124-25.)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### 4.   Flynn's Prior Coverage at Raytheon Does not Support Coverage with Sun Life

31.   Plaintiff suggests that Flynn was covered by Sun Life because he was previously insured by Raytheon prior to his hire by Pulau.  This argument also fails.  The Sun Life policy contains a Continuity of Coverage provision, but that provision applies only when an employer changes insurers, not when an employee changes employers.  Sun Life's policy language explicitly addresses the situation where an employer switches insurers:

**Continuity of Coverage**

> In order to prevent loss of coverage for an Employee *when this Policy replaces a group Life policy the Employer had in force with another insurer* immediately prior to October 1, 2003, Sun Life will provide the following coverage.

**Employees not Actively at Work[7] on October 1, 2003**

> An Employee may become insured under the Policy on October 1, 2003, subject to all of the following conditions:
>
> (1) he was insured under the prior insurer's group Life policy immediately prior to October 1, 2003; *and*
>
> (2) he is not Actively at Work on October 1, 2003; *and*
>
> (3) he is a member of an Eligible Class under this Policy; *and*
>
> (4) premiums for the Employee are paid up to date; *and*
>
> (5) he is not receiving or eligible to receive benefits under the prior insurer's group life policy." (191) (emphasis added).

32.   The Court is required to apply the clear and unambiguous terms of the plan document.  *See Padfield v. AIG Ins. Co.*, *supra*.  This is not a situation where the Sun Life policy replaced an existing policy Pulau had with another insurer.  Therefore,

---

[7]   Actively at work is defined as full time work for the employer (Pulau).  (175.)  Therefore, Flynn's work at Raytheon does not qualify.

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

1  the Continuity of Coverage provision does not apply.  Even if the provision were

2  applicable, Flynn did not satisfy either the first or fourth conditions above:  (1) he was

3  not insured under Pulau's prior insurer's group life policy (Sun Life issued this policy

4  to Pulau back in 2003 (168)), and (4) premiums were not paid up to date.  Flynn is

5  therefore not entitled to coverage under the continuity of coverage provision.

**5.    Neither Conversion Coverage Nor Grace Period Coverage Applies**

8  33.    Plaintiff's argument that Flynn was eligible for conversion coverage fails

9  under the policy language.  As a preliminary matter, Flynn was never insured in the

10  first place, and therefore, his coverage could not have "terminated."  Moreover, the

11  conversion privilege states as follows:

> 1.  If all or part of an Employee's Life Insurance
> ceases or reduces due to:
> -    Termination of his employment; or
> -    Termination of his membership in an Eligible
>      Class; or
> -    The Employee's retirement; or
> -    The Employee reaching a specified age; or
> -    The Employee changing to a Eligible Class; or
> -    Termination of the Employee's Waiver of Premium
>      continuation; or
> -    The Employee's continuation period ending during
>      layoff or an approved leave of absence;
> -        Then the Employee may apply for
>          an individual policy on his own life
>          up to the amount that ceased.  (189.)

22  34.    Plaintiff fails to explain which of these conditions Flynn satisfied.  The

23  record demonstrates that he satisfied none of them.  Moreover, there could be no

24  "amount that ceased" under the language of the policy because, as stated previously,

25  the Court is of the opinion that Flynn never had life insurance coverage in force in the

26  first place.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

35.     Similarly, the grace period provision does not operate to manufacture coverage for Flynn.  The grace period provision applies only to the group policy itself, not to individual certificates issued thereunder.  The policy states:

> The Grace Period is 31 days following a premium
> due date.  During the Grace Period, the Policy shall
> continue in force, unless the Policyholder has given
> Sun Life written notice to discontinue this policy....
> (210.)

The "policyholder" is defined as "Pulau Electronics Corporation" (168), not as employees of Pulau.

### 6.     The Doctrine Of Temporary Insurance Does Not Create Coverage For Flynn

36.     As part of her administrative appeal to Sun Life, Plaintiff argued that under the California doctrine of temporary insurance, coverage was created when payroll deductions were taken from Flynn by Pulau.  She further argued that the fact that these payments were never submitted to Sun Life is irrelevant because Pulau was acting as Sun Life's agent at the time the payroll deductions were taken.  The Court finds that Plaintiff's argument fails for several reasons.

37.     First, this argument fails under California's temporary insurance statute. The temporary insurance doctrine does not apply to group insurance policies.  *See* Cal. Ins. Code § 10115.  The statute allows temporary coverage for policies "*other than group life insurance*" if (1) the premium payment is accepted with an application or the insurer receives the payment at its home office, (2) the insurer approves the application pursuant to its regular underwriting practices and standards for the rate and plan applied for, and (3) the applicant dies on or after the date requested in the application for the policy to be effective, but before the policy is issued and delivered.  *Id.*

38.     Second, even if this doctrine applied to group life insurance, which it clearly does not, no temporary insurance would have been created because the policy specifically provides that no coverage will be effective until premiums are paid to the

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

*insurer*.  (168.)  As explained above, Pulau is not Sun Life's agent, so its payroll deduction did not constitute premium payment to Sun Life.  Moreover, the single premium deduction was reimbursed in the pay cycle immediately following Flynn's election of extra pay, well before his death.  (125.)  Additionally, Sun Life did not approve the application.  Evidence of insurability was required, yet never submitted.  (5, 26, 108.)  Therefore, the requirements of the temporary insurance statute have not been satisfied in order for the Court to apply the doctrine to this case.

39.     Third, California's temporary insurance doctrine is preempted by ERISA.  On this point, the Court is persuaded by the decision in *Arocho v. Goodyear Tire and Rubber Co.*, 88 F.Supp.2d 1175, 1183 (D. Kan. 2000).  In *Arocho*, the plaintiff sued the insurer and the deceased husband's employer, seeking to recover benefits under an optional life insurance plan.  The insurer refused payment because the decedent died two days prior to the effective date of the policy.  The court held that the temporary insurance doctrine was preempted by ERISA, and the fact that the employer began payroll withholding one month earlier than the effective date did not accelerate the date for coverage.  *Id.*

### 7.   Plaintiff's "Entire Contract" argument has no merit.

40.     Plaintiff also seems to rely on the "Entire Contract" provision of the Sun Life policy.  Sun Life argues this provision is inapplicable, and the Court agrees.  That provision states:

**Entire Contract - Policy Changes**

1.     This Policy is the entire contract.  It consists of:

   a.     all of the pages of the Policy;
   b.     the attached Application of the Policyholder;
   c.     each Employee's written application for insurance (Employee retains his own copy).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2.     This Policy may be changed in whole or in part. Only an officer of Sun Life may approve a change. The approval must be in writing and endorsed on or attached to this Policy.

3.     Any other person, including an agent, may not change this Policy or waive any part of it. (204.)

41.     As a threshold matter, Flynn's declination of the Sun Life policy and coverage renders the Sun Life policy inapplicable to his claim. His enrollment form was never submitted to Sun Life. The enrollment form therefore never became part of that contract. The Administrative Record is clear that Flynn affirmatively declined the Sun Life coverage, accepted increased pay in its place, and was refunded the initial salary deduction attributable to the Sun Life coverage (which itself was never sent to Sun Life).[8] (276, 280-81, 124-26.)

42.     Accordingly, in light of the above-stated findings of fact and conclusions of law, the Court finds in favor of Defendants and orders that Judgment shall be entered in favor of Defendants. Plaintiff shall recover nothing against Defendants. Defendants shall be entitled to recover costs of suit pursuant to 28 USC § 1920. Defendants may also be entitled to recovery of reasonable attorney's fees pursuant to ERISA § 502(g)(1); 29 U.S.C. § 1132(g)(1); 2 ERISA Practice and Procedure § 8.3. In cases such as the one presently before the Court, the award of attorney's fees is within the discretion of the Court.

DATED: _August 10, 2011_

_Valerie Baker Fairbank_

HONORABLE VALERIE BAKER FAIRBANK
UNITED STATES DISTRICT JUDGE

---

[8] The Parol Evidence Rule does not advance Plaintiff's case either. That rule simply bars oral testimony or extrinsic evidence offered to vary the terms of a written contract. *See Cruzan v. Missouri Department of Health*, 497 U.S. 261, 284, 110 S.Ct 2841, 2854 (1995). It is unclear what evidence Plaintiff wishes to exclude, or what evidence purportedly varies the terms of any contract.

CASE NO. CV 10-4832 VBF (MANX)
FINDINGS OF FACT AND CONCLUSIONS OF
LAW [PROPOSED]

1  Respectfully Submitted by:

2  BURKE, WILLIAMS & SORENSEN, LLP
   DANIEL W. MAGUIRE
3

4
   By: s/Daniel W. Maguire
5          DANIEL W. MAGUIRE
           Attorneys for Defendant
6          Sun Life Assurance Company of Canada

7
   HUNTON & WILLIAMS LLP
8  ROLAND JUAREZ

9

10
   By:  s/Roland Juarez
11         ROLAND JUAREZ
           Attorneys for Defendant
12         Pulau Electronics Corporation Employee
           Benefit Plan
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

24